**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | BODY TRANSIT, INC. | : | Chapter 11 |
| | d/b/a RASCALS FITNESS, | : | |
| | | : | |
| | Debtor | : | Bky. No. 20-10014 ELF |

# M E M O R A N D U M

## I. INTRODUCTION

On January 2, 2020, Body Transit, Inc. ("the Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code. In the petition, the Debtor designated itself as a "small business debtor" as defined in 11 U.S.C. §101(51D). At the time the case commenced, the Debtor operated three (3) fitness clubs in Montgomery County, Pennsylvania.

The Small Business Reorganization Act of 2019 ("the SBRA") was enacted on August 23, 2019, with an effective date of February 19, 2020. See Pub. L. No. 116-54 §5, 133 Stat. 1079, 1087. The SBRA authorizes a small business debtor to proceed under the new provisions of subchapter V of chapter 11 of the Bankruptcy Code.

The Debtor has filed a motion ("the Motion") seeking authority to proceed under subchapter V (despite the fact that its case was filed before the SBRA became effective). A creditor, First Bank, objects to the Debtor's request.

For the reasons stated below, based upon the circumstances of this case, I will overrule First Bank's objection and permit the Debtor to proceed under subchapter V.

## II. BACKGROUND

### A.

As stated earlier, the Debtor commenced this case on **January 2, 2020**.

Thereafter, the following key events occurred, both before and after the Debtor filed the Motion that is the subject of this Memorandum:

- on **January 16, 2020**, the Debtor filed its schedules and statement of financial affairs, (Doc. # 14);

- the Debtor filed an expedited motion for authorization to use of cash collateral on **January 28, 2020** and then withdrew the motion on **February 5, 2020**,, (Doc. #'s 25, 26, 44);[1]

- on **February 6, 2020**, West Ridge Pike, L.P. ("WRP"), the Debtor's landlord at its business location in **Limerick, PA**, filed a motion for relief from the automatic stay, seeking authority to exercise its state law remedies for possession of the premises, (Doc. # 47);

- the court granted WRP's stay relief motion on **March 10, 2002**, (Doc. # 95);

- on **February 11, 2020**, the court granted the Debtor's motion to sell the assets and assign the lease with respect to a second business location, in **North Coventry PA**, thereby ending the Debtor's operations there, (Doc. #55);

- on **February 21, 2020**, Collegeville Plaza Associates, L.P. ("CPA"), the Debtor's landlord at the Debtor's third and final business location, in **Collegeville, PA**, filed a motion for relief from the automatic stay, seeking authority to exercise its state law remedies to retake possession of the leased premises, (Doc. # 72);[2]

- on **February 13, 2020**, following a status conference held on February 12, 2020, the court entered an order requiring the filing of a Chapter 11 Plan, Disclosure Statement and Motion for Approval of Disclosure Statement, Plan

---

[1] First Bank objected to the motion for use of cash collateral. (Doc. # 32).

[2] A hearing on CPA's motion, originally scheduled on March 18, 2020 was continued to April 15, 2020.

> Voting Materials and Plan Voting Procedures on or before June 12, 2020, (Doc. # 60);

- on **February 19, 2020**, First Bank filed a motion requesting the appointment of a chapter 11 trustee, (Doc. # 65);[3]

- On **March 2, 2020**, First Bank filed a motion requesting the court allow it super-priority administrative expense claim of $34,083.00 on the ground that the Debtor used First Bank's cash collateral without its consent and without court authority, (Doc. # 82).[4]

Thus, at present, the Debtor has effectively terminated operations at two (2) of its three (3) locations and faces the potential loss of its last location (if the creditor is granted stay relief and then successfully enforces its state law rights). Further, the Debtor's relationship with its primary secured creditor has deteriorated to the point where the creditor seeks to replace the Debtor's management with a court appointed trustee.

**B.**

On March 2, 2020, the Debtor filed the Motion and requested an expedited hearing. I granted the expedited hearing request and scheduled the hearing on March 11, 2020.

In the Motion, the Debtor alleges that, prior to filing its petition, the Debtor intended to wait until February 19, 2020, the effective date of the SBRA, before seeking bankruptcy relief, so that it could elect to proceed under subchapter V of chapter 11. However, a creditor levy on the Debtor's bank account compelled the Debtor to seek bankruptcy relief earlier. The Debtor now

---

[3] A hearing on the motion for appointment of a trustee is scheduled for March 25, 2020.

[4] A hearing on First Bank's motion for allowance of a super-priority administrative expense claim is scheduled for April 1, 2020.

wishes to implement its original intention of proceeding under the SBRA.

In support of the Motion, the Debtor asserts, inter alia, that:

- Fed. R. Bankr. P. 1009 authorizes a debtor to amend a voluntary petition "as a matter of course at any time before the case is closed, " (Motion at ¶ 3);

- the Debtor filed an amended petition on February 19, 2020, electing to proceed under subchapter V; and

- permitting the Debtor to proceed under subchapter V is consistent with the SBRA because:

    - the Debtor has satisfied the obligations imposed by the SBRA, such as participating in a status conference, see 11 U.S.C. §1188(a),[5] and filing a statement detailing its efforts to reorganize, see 11 U.S.C. §1188©;[6]

    - to the extent that the trustee who would be appointed under subchapter V has not had the opportunity to attend the individual interview ("the IDI") conducted by the U.S. Trustee[7]

---

[5]     See 11 U.S.C. §1188(a).  The status conference was scheduled by the court and held on February 12, 2020.  (Docket Entry # 62).

[6]     Section 1188(c) provides:

> Not later than 14 days before the date of the status conference under subsection (a), the debtor shall file with the court and serve on the trustee and all parties in interest a report that details the efforts the debtor has undertaken and will undertake to attain a consensual plan of reorganization.

I note that the Debtor's report was  attached to the Motion and was not filed fourteen (14) days before the status conference already held in this case, as required by the not-yet-in effect SBRA.  Nor was it served on the subchapter V trustee (because one has not yet been appointed).

[7]     In all chapter 11 cases filed in this district, the U.S. Trustee promptly holds a meeting (the IDI)  with a representative of the debtor and counsel to discuss  the administration of the case and the debtor's obligations as a debtor-in-possession under chapter 11.

        or the status conference mandated by 11 U.S.C. §1188(a),[8] the Debtor is prepared to reschedule (re-do) the IDI as well as the status conference;

- the Debtor intends to file a chapter 11 plan by April 2, 2020, thereby complying with the SBRA's statutory deadline for doing so, see 11 U.S.C. §1189(b).

On March 10, 2020, the day before the hearing on the Motion, First Bank filed a response to the Motion, objecting to the relief requested.

Initially, First Bank contends that, as a matter of statutory construction, the court should honor the presumption against retroactive application of statutes.

First Bank further argues that permitting the Debtor to proceed under subchapter V would infringe on its rights to obtain the appointment of an appropriately-empowered chapter 11 trustee.

In light of what it considers to be the Debtor's abysmal post-petition performance - the Debtor's failure to pay post-petition rent, resulting in the grant of stay relief at one (1) location and the landlord's request for stay relief with respect to the Debtor's last remaining location; the Debtor's unauthorized use of cash collateral; and the Debtor's failure to file any monthly operating reports or otherwise provide accurate information regarding its financial status – First Bank contends that it will be prejudiced if the Debtor is permitted to proceed under subchapter V, particularly because First Bank seeks appointment of a chapter 11 trustee.

First Bank points out that a subchapter V trustee in possession, unlike a trustee appointed under 11 U.S.C. §1104(a), lacks the authority to propose a chapter 11 plan. Compare 11 U.S.C. §1183(b)(5) (incorporating by reference 11 U.S.C. §1106(a)(1), (2) and (6) ***only)*** with 11 U.S.C.

---

[8]    11 U.S.C. §1183(b)(3) mandates the subchapter V trustee's attendance at the §1188(a) status conference.

§1106(a)(5)); see also 11 U.S.C. §1189(a) (only the debtor may file a plan under subchapter V).

In First Bank's view, granting the Debtor subchapter V status "would infringe on the [potential] Chapter 11 Trustee's discretion and ability to contemplate and file a reorganization plan." (First Bank Mem. at 10).

### III.  DISCUSSION

#### A.

#### 1.

Since the effective date of the SBRA, there have been two (2) reported decisions under the new subchapter V of chapter 11 of the Bankruptcy Code: In re Progressive Solutions, Inc., 2020 WL 975464 (Bankr. C.D. Cal. Feb. 21, 2020) and In re: Moore Properties of Pers. Cty., LLC, 2020 WL 995544 (Bankr. M.D.N.C. Feb. 28, 2020).  Both of these thoughtful decisions address the question of whether a small business debtor in a case pending on the effective date of the SBRA may amend its bankruptcy petition and elect to proceed under subchapter V.

In order to develop a framework for deciding the present contested matter, it is helpful to review these decisions.

#### 2.

In Progressive Solutions, a small business debtor that had commenced its chapter 11 case on November 21, 2018, almost fifteen (15) months before the SBRA's effective date, filed a motion requesting the entry of an order for authorizing the amendment of its chapter 11 petition to permit it to proceed under subchapter V of chapter 11 of the Bankruptcy Code.

The court concluded that it could find "no legal reason" to restrict a pending chapter 11 small business debtor from resdesignating its case as a subchapter V case. 2020 WL 975464, at *5. In reaching this conclusion, the court relied on:

- the legislative history of the SBRA, which states that the purpose of the statute is to promote "successful reorganizations using the tools that are now available" under subchapter V, 2020 WL 975464, at *5;

- the canon of statutory construction that states that, generally, a court should apply the law in effect at the time it renders its decision, id. (citing Landgraf v. USI Film Products, 551 U.S. 244 (1994)); and

- the court's ability to reschedule the procedural matters (e.g., the IDI and status conference) and the deadlines (e.g., ninety (90) days to file a plan) imposed by the SBRA, id.

The court qualified its conclusion by pointing out that it would not be permissible for a debtor to make a belated election to proceed under subchapter V if "vested rights" of a party in interest would be impaired. Id.

Next, in a perhaps surprising twist given its relatively lengthy analysis of the SBRA, the Progressive Solutions court denied the debtor's motion based on Fed. R. Bankr. P. 1009.

Rule 1009 provides:

> (a) General Right To Amend. A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

The court read Rule 1009 as providing the proper procedure for a belated election to proceed under subchapter V: amendment of the debtor's bankruptcy petition. As for the last sentence of the rule, which authorizes the filing of a motion, the court held that this provision is

-7-

"non-applicable to debtor motions;" rather, the provision is intended solely to permit non-debtor parties to demand that the debtor make changes to the petition or schedules. 2020 WL 975464, at *6.

Thus, Progressive Solutions held that before a court may determine whether a debtor may make a belated subchapter V election, the debtor must amend its petition to make the election and a dissenting party must object, thus creating a contested matter. In effect, the court held that there was no live controversy before it, which required denial of the debtor's motion as a request for an advisory opinion. See generally Wyatt, Virgin Islands, Inc., 385 F.3d 801, 805–06 (3d Cir. 2004); Laufgas v. O'Brien, 2010 WL 2485644, at *2 (D.N.J. June 4, 2010).

### 3.

In the second reported decision under the SBRA, Moore Properties, the debtor filed its bankruptcy case on February 10, 2020 and designated itself as a small business debtor. The bankruptcy administrator filed an objection to that designation. On February 24, 2020, the debtor filed an amended bankruptcy petition electing to proceed under subchapter V.

The debtor's legal theory was that, even if it did not meet the definition of small business debtor when it filed its designation, the SBRA's amendment to the definition of "small business debtor" in 11 U.S.C. §101(51D) cured the defect and, in addition, it had the right to amend its petition to make a subsequent election to proceed under subchapter V.[9]

---

[9] The details regarding the SBRA's amendment to the definition of "small business debtor" definition are not pertinent to the matter sub judice, so I will not discuss them. Suffice it to say that the Moore Properties court agreed that the debtor fell within the scope of the amended definition.

The Moore Properties court began its analysis as follows:

> The parties in this case present two issues: (1) may Debtor, whose case was pending on the effective date of the SBRA, elect to proceed under subchapter V of chapter 11; and (2) is Debtor, who did not meet the definition of a small business debtor on the petition date, eligible to proceed under subchapter V when it now meets that definition under the SBRA? Because Debtor only meets the definition of a small business debtor to the extent that the SBRA applies, these issues bleed into one another, and the Court will consider the general applicability of the SBRA to this case first.

2020 WL 995544, at *2.

In turning first to the debtor's election to proceed under subchapter V, the court pointed out that there are two (2) "potentially conflicting" canons of statutory construction that guide courts in determining whether intervening changes in the law apply to prior conduct of the parties: (1) a court is to apply the law in effect at the time it renders its decision; and (2) retroactivity is not favored in the law. 2020 WL 995544, at *3. Rather than trying to harmonize these canons, the court focused on a determination of whether application of a newly enacted statute to prior conduct affects mere contractual rights as opposed to a traditional "vested property interest." Retroactive application of new law that modifies a vested property interest generally is impermissible. Id. (citing United States v. Sec. Indus. Bank, 459 U.S. 70, 75 (1982)).

Employing this analytic framework, Moore Properties held that the application of subchapter V "does not alter the rubric under which debtors may affect pre-petition contractual rights of creditors, much less vested property rights," id. at *4, and therefore may be applied in chapter 11 cases pending at the time of the SBRA's effective date.

The court observed that the main thrust of subchapter V involves several modifications of the requirements for confirmation of a plan of reorganization: the elimination of the requirement

that at least one (1) impaired class accept the proposed plan, and the alteration of the definition of "fair and equitable" for classes of unsecured creditors and interests (by substituting the disposable income requirement in lieu of the absolute priority rule under § 1129(b)(2)(B) and (C)). <u>Moore Properties</u> held that these changes do not effect an "impermissible retroactive taking. . . . [at least in cases that are not] sufficiently advanced that the substantive alterations in the requirements for plan confirmation arise to a taking of a vested property rights." 2020 WL 995544, at *5.[10]

Next, the court found that the debtor met the amended definition of "small business debtor" in 11 U.S.C. §101(51D). Consequently, <u>Moore Properties</u> held that, as a qualified small business, the debtor could elect to proceed under subchapter V. Therefore the court overruled the bankruptcy administrator's objection to the Debtor's election to proceed under subchapter V.

---

[10] There were two (2) qualifications in the court's analysis.

The court pointed out that subchapter V also modifies the confirmation requirements by eliminating the application of §1129(a)(15) in subchapter V cases. Section 1129(a)(15) provides that if an objection to confirmation is filed by the holder of an allowed unsecured claim, an individual debtor's plan must either pay the objector's claim in full or distribute the debtor's projected disposable income (as determined by 11 U.S.C. §1325(b)(2)) for the entire term of the plan. The court found the provision inapplicable because the <u>Moore Properties</u> debtor is not an individual.

The court also observed that 11 U.S.C. §1190(3) creates an exception to the prohibition against the modification of a security interest in the principal residence of the debtor found in 11 U.S.C. §1123(b)(5), implying that retroactive application of this provision may be impermissible. However, the court again stated that this provision had no applicability in the case before it because the <u>Moore Properties</u> debtor is an artificial entity that does not have a residence.

**B.**

Consideration of both Moore Properties and Progressive Solutions influences my determination of this contested matter.

**1.**

First, I agree with the procedural analysis in Progressive Solutions. Consequently, based on Fed. R. Bankr. P. 1009, I hold that a small business debtor has the right to amend its chapter 11 petition to elect to proceed under subchapter V and, once the amendment has been filed, the case should proceed under subchapter V until an objection is filed timely[11] and granted by the court.

In this case, the Debtor filed an amended bankruptcy petition making the subchapter V election, but also filed the Motion, which triggered the timely response by First Bank. First Bank's response distinguishes this case from Progressive Solutions. In the circumstances presented here - the existence of an objection and a current, live dispute - I will treat First Bank's response to the Debtor's Motion as an objection to the Debtor's election to proceed under subchapter V. See Fed. R. Bankr. P. 1001 (the Federal Rules of Bankruptcy Procedure should be "construed, administered, and employed by the court . . . to secure the just, speedy and inexpensive determination of every case and proceeding").

---

[11] There are no rules of court governing this objection process. An objection to a belated election to proceed under subchapter V should be filed promptly; otherwise, the doctrine of laches may apply. See generally In re Menden, 2011 WL 4433621, at *5 (Bankr. N.D. Ohio Sept. 21, 2011) (in absence of deadline for filing an objection to a proof of claim, doctrine of laches may apply); In re Mahan, 104 B.R. 300, 301 (Bankr. E.D. Cal. 1989) (same).

**2.**

The next question, one that the Progressive Solutions court had no reason to decide, is: what standard should be applied by a court in considering an objection to a belated subchapter V election? Moore Properties provides the answer to this question.

Like the Moore Properties court, I hold that, in general, the new subchapter V provisions do not impair the vested property interests of creditors and, therefore, the concerns supporting application of the canon of statutory construction disfavoring the retroactive application of new law are absent. Consequently, it is appropriate to apply the law presently in effect: the SBRA.

Other than its concern regarding the limited powers of a subchapter V trustee, should one be appointed – a concern I address below – First Bank makes no argument suggesting that its vested property interests would be impaired by permitting the Debtor to proceed under subchapter V. Consequently, I will overrule First Bank's general objection that permitting a debtor in a case pending on the effective date of the SBRA to elect to proceed under subchapter V is an impermissible retroactive application of the statute.

Further, I agree with the Moore Properties court that in evaluating an objection to a belated subchapter V election, the court may consider the extent to which parties in interest have invested in the case and whether the court has entered orders that create sufficient vested property interests or post-petition expectations such that the application of subchapter V to those rights or expectations would offend "elementary considerations of fairness." Moore Properties, 2020 WL 995544, at *5 (citing and quoting Landgraf, 511 U.S. at 265).[12]

---

[12] I perceive this standard as equivalent to formulation in Progressive Solutions that it is not permissible for a debtor to make a belated election to proceed under subchapter V if "vested rights" of a party in interest would be impaired.

I find further support for this standard in existing case law under Fed. R. Bankr. P. 1009.

In a substantial number of reported decisions in this Circuit, courts have held that the ability to amend provided by Rule 1009 is subject to a party in interest's right to object if the amendment is made in bad faith or would unduly prejudice the party.  See, e.g., In re Cudeyro, 213 B.R. 910, 918 (Bankr. E.D. Pa. 1997); see also In re Brooks, 393 B.R. 80, 88 (Bankr. M.D. Pa. 2008); In re Romano, 378 B.R. 454, 467-68 (Bankr. E.D. Pa. 2007); In re Bendi, Inc., 1994 WL 11704, at *2 (Bankr. W.D. Pa. Jan. 13, 1994).[13]

In effect, this is the same principle articulated in Moore Properties.  I hold that this standard - whether the amendment is made in bad faith or would unduly prejudice a party -  is appropriate in evaluating an objection to a belated election to proceed under subchapter V.[14]

---

[13]     The cases cited in the text applying the "prejudice or bad faith" standard for objections to Rule 1009 amendments all involve debtor attempts to amend their election of exemptions under 11 U.S.C. §522(b)(1).

I am cognizant that the a court's ability to preclude an amendment to a claim of exemption on equitable or bad faith grounds may be doubtful after the Supreme Court's decision in Law v. Siegel, 571 U.S. 415 (2014).  See In re Whittick, 547 B.R. 628, 639 (Bankr. D.N.J. 2016).  However, the general legal principles stated in the cited cases are relevant and persuasive outside of the debtor exemption context.

Law v. Siegel was grounded in the existence of a debtor's substantive, statutory right to claim an exemption.  Nothing in the Supreme Court's analysis suggests that a bankruptcy court's equitable power to limit amendments under Rule 1009 that are made in bad faith or unfairly prejudice parties in interest in other contexts that do not involve a Congressionally granted substantive, statutory right.  Here, the right to amend a bankruptcy petition to elect subchapter V status is not grounded in the Bankruptcy Code; it derives from the rules of court.  As such, the amendment power is subject to the equitable powers of the court and the flexibility afforded by Fed. R. Bankr. P. 7001.

[14]    It is worth noting that had the Debtor, as a small business debtor, filed this case after the SBRA's effective date and made the subchapter V election, First Bank would have lacked any ground to object based on the limitations on the power of the subchapter V trustee-in-possession.  The issue arises only because there are limitations on the right to amend under Fed. R. Bankr. P. 1009.

## C.

Resolution of First Bank's objection boils down to a determination of this question: if appointment of a trustee is appropriate under §1104, as First Bank contends, are the limitations on the powers of a §1183 subchapter V trustee-in-possession, as compared to a §1104 trustee-in-possession, unduly prejudicial to First Bank?  In other words, is it more likely than not that a non-SBRA chapter 11 trustee-in-possession would be materially more protective of the interests of the bankruptcy estate and parties in interest in this case than a subchapter V trustee?

To the extent First Bank invites the court to answer to this question as a matter of law, I decline the invitation.  Whether the subchapter V trustee-in-possession's lack of authority to propose a chapter 11 plan unduly prejudices creditors most likely turns on the facts of each case.  The answer may be different in circumstances other than those presented here.

In this case, based on the information available to me about the Debtor, First Bank has not satisfied its burden of proof on the issue.[15]

First Bank depicts the Debtor not merely as an entity that is violating its obligations as debtor-in-possession, but, more fundamentally, as a failing, unprofitable business with no hope of reorganizing.  If the picture painted by First Bank is correct (and the parties have not yet had the opportunity to make a record on these questions), it is unlikely that it would be in the best

---

[15]    As stated earlier, notwithstanding the fact that this contested matter was commenced by the Debtor's motion, it is more properly characterized as First Bank's Objection to the Debtor's election to proceed under subchapter V (made via the amendment to the Debtor's bankruptcy petition).  It is appropriate to place the burden of proof on First Bank, as it is the de facto moving party,. See, e..g., In re Somerville, 605 B.R. 700, 707 (Bankr. D. Md. 2019) (in general, absent a contrary provision in the Code or the Bankruptcy Rules, the movant bears the burden of proof when requesting relief from the court).

interests of the bankruptcy estate to put a trustee in possession of the Debtor's assets for the purpose of operating the business until a plan of reorganization can be proposed. It is far more likely that the Debtor's post-petition problems, if not cured expeditiously, would result in a conversion to chapter 7 or dismissal. Thus, the prejudice that First Bank fears from its inability to have a §1104 trustee-in-possession appointed seems largely hypothetical.[16]

In short, in the absence of a particularized showing and based on the present circumstances of this case, First Bank has not met its burden of showing the level of prejudice required to override the Debtor's right to amend its petition under Fed. R. Bankr. P. 1009. Consequently, the Motion will be granted and First Bank's objection to the Debtor's election to proceed under subchapter V will be overruled.

An appropriate order follows.[17]

---

[16] Nor does it appear likely, given the disclosures in the Debtor's schedules and the pending motion for relief from the automatic stay filed by the landlord at the Debtor's only remaining business location, that a trustee-in-possession would have an incentive to operate the business in order to conduct a §363 sale or propose a liquidating chapter 11 plan.

The primary assets disclosed by the Debtor are $5,000.00 in receivables (all more than 90 days old) and $68,000.00 in gym equipment, some of which was sold as part of the sale of the Debtor's North Coventry location. First Bank asserts that its claim in excess of $1.1 million is secured by all of the Debtor's assets. Of course, a trustee sale of the overencumbered assets with a "carve-out" for the bankruptcy estate is possible. See, e.g., In re the Baptist Home of Phila., 525 B.R. 236, 243-44 (Bankr. E.D. Pa. 2014). However, with the possible exception of the Debtor's customer list, the value in the business appears to be based on the income derived from the services provided rather than from the business assets.

While I cannot completely rule out the scenario outlined by First Bank, based on my experience, I am able to conclude that appointment of a chapter 11 trustee who would exercise the powers available under §1104 appears exceedingly unlikely in this case.

[17] I make a final observation.

As this decision is being made, economic activity in the nation is largely at a standstill
(continued...)

**Date:  March 24, 2020**

_____
**ERIC L. FRANK
U.S. BANKRUPTCY JUDGE**

---

¹⁷(...continued)
due to the public health response to the coronavirus pandemic.  The Debtor, a health club operator, undoubtedly is shuttered.  So, one might ask, why bother with this decision?

        There are at least two (2) reasons for doing so.

        First and foremost, the federal courts remain open.  The Debtor and First Bank not only have presented this contested matter for decision, but they also have an upcoming hearing on the pending motion for appointment of a trustee (which may be mooted by this ruling).  The CPA's motion for relief from the automatic stay regarding the Debtor's Collegeville location also is unresolved.  The interested parties are entitled to a decision on the subchapter V issue because it may inform their business judgments as we proceed further in this case.

        Second, underlying the federal judiciary's policy of keeping the federal courts open is the premise that this emergency will pass, commerce will resume, and the judiciary will continue its role in resolving various economic disputes.  The issue presented by the parties may not recur frequently because, as time goes on, there will be fewer pending chapter 11 cases that were pending on the SBRA's effective date.  However, in the future, some chapter 11 small business debtors who file their cases without electing to proceed under subchapter V may later seek to amend their petition.  Thus, undoubtedly, the issue will arise again. In writing this Memorandum, I have attempted to continue the judicial discussion of the issue so ably initiated by the courts in <u>Progressive Solutions</u> and <u>Moore Properties</u>.