**Fill in this information to identify the case:**

Debtor Name_____ BODY TRANSIT, INC._____

D/B/A RASCALS, INC._____ United States

Bankruptcy Court for the: EASTERN DISTRICT OF PA_____

CASE NUMBER 20-100014
                                                                    (State)

X Check if this is an amended filing

Official Form 425A

# AMENDED Plan of Reorganization for Small Business Under Chapter 11 SUBCHAPTER V    APRIL 22, 2020

BODY TRANSIT, INC. D/BA/ RASCAL'S FITNESS's Plan of Reorganization, Dated APRIL 22, 2020

### Background for Cases Filed Under Subchapter V

**A. Description and History of the Debtor's Business Pursuant to 11 U.S.C. Section 1190(1)**

The Debtor is a Pennsylvania corporation in the business of previously operating three health and fitness clubs in Montgomery County, Pennsylvania. The Debtor's main location is in Collegeville, Pennsylvania at the Collegeville Shopping Center with an address of 222 East Main Street, Collegeville, Pennsylvania (the "Collegeville Location"). The second location was in Limerick Township, Pennsylvania at the Ridge Plaza Shopping Center with an address of 463 West Ridge Pike, Limerick, Pennsylvania (the "Limerick Location").The assets at this location will be sold pursuant to court approval on April 28, 2020. The third location was in Pottstown, Pennsylvania at the Suburbia Shopping Center with an address of 54-58 Glocker Way, North Coventry Township, Pottstown, Pennsylvania and was recently sold with approval by this Court on February 13, 2020 (the "North Coventry Location").

As previously noted on multiple documents filed in this case, the Debtor had hoped to wait to file the instant chapter 11 until the Debtor had **(a) entered into a lease amendment with 451 West Ridge Pike, L.P., (the debtor's Limerick, Pennsylvania landlord, (the "Limerick Landlord"); (b) the Debtor had entered into a new and more affordable equipment lease with Univest Bank and Trust Company (the "Univest Equipment Lease"); (c) after the Debtor's proposed sale of its assets located at North Coventry Location (the "North Coventry Sale" and the "North Coventry Assets"); and (d) the enactment of the Small Business Reorganization Act of 2019 in February, 2020.**

Unfortunately, on January 2, 2020, the Debtor's bank accounts were surprisingly levied two days before Debtor's payroll was scheduled based on a confession of judgment entered in Montgomery County by the Limerick Landlord.

Debtor was forced to file an emergency chapter 11 petition late on the evening of January 2, 2020 in order for the Debtor's payroll funds to be released and thereby scrapped the Debtor's plans to file an orderly chapter 11 as set forth above.  As a result of the emergency chapter 11, the Debtor suffered irreparable harm from the loss of many part-time employees at its Limerick Location and the potential loss of the Buyer for the North Coventry Sale. The Debtor obviously, was therefore unable to enter into a more favorable lease agreement/amendment with the Limerick Landlord at the time of the petition date

Since the petition date, the Debtor has been active and cooperative in its chapter 11, responding to Motions and having the Debtor's principal appear at a Section 2004 deposition requested by First Bank.. Subchapter V of the Small Business Reorganization Act (the "SBRA") was created specifically with this type of Debtor in mind. The Debtor is a typical "mom and pop" business that has operated in Montgomery County since 2007. The Debtor believes this proposed Plan of Reorganization (the "Plan") is fair and equitable based on the Debtor's projected disposable income and thus, entirely feasible.

**The Debtor's Creditors:**
The Debtor's only real secured creditor is **First Bank** which has a lien in all of the Debtor's assets, tangible and intangible. The Debtor and First Bank have a long and mostly amicable relationship as First Bank (and its predecessor, Bucks County Bank) financed all of the Debtor's running capital since the Debtor began operating in 2007. First Bank filed four (4) poofs of claim in the Debtor's bankruptcy totaling approximately $1,110,343. First Bank received funds from the North Coventry Sale in the amount of $111,103; has a priority administrative claim in the amount of $22,876 and is expected to received proceeds from the sale of the Limerick Location equipment in the amount of approximately $32,000. First Bank's receipt of these funds reduces their claim to $944,364,000. The Debtor is concurrently filing with this plan a Motion to Determine And Value First Bank's Secured Claim (the "Valuation Motion"). Based on the facts set forth in the Valuation Motion, First Bank's Secured Claim is determined at $317,578.82, which is the amount set forth in the proposed payments in **Exhibit "A, A-1 AND A-2."**

Complicating the Debtor's reorganization process, First Bank made a Section 1111(b) election at the suggestion of the Court. The Debtor objects to First Bank's election as such election would essentially void all of the provisions set forth in the SBRA which was enacted to make the reorganization process easier, not more difficult for a small business owner. Moreover, if the value of the debtor's property in which the secured creditor has an interest is of inconsequential value, the secured creditor is prohibited from making such election. See 11 U.S.C. Section 1111(b)(1)(B)(i).

**The value of the Debtor's property in this case is inconsequential and has zero value**. The only property still held by the Debtor is the equipment in the Collegeville Location and some cash on hand. The Collegeville Location had no value as a going concern as of the petition date as set forth in the Valuation Motion. Due to the Covid-19 epidemic, the value of the equipment in the Collegeville Location is now worth nothing. Gold's Gym, Retro Fitness and 24-Hour Fitness are closing and considering bankruptcy. The shuttering of these large-scale gyms is creating a glut of fitness equipment on the specialized market making the equipment impossible to sell. The Debtor was fortunate to implement the sale process for the Limerick Location prior to the Covid-19 shutdown. The cash on hand will soon be depleted by partial rent for the Collegeville Location, payroll, payroll taxes, utilities and additional cleaning supplies due to Covid-19 for the Collegeville Location.

The Debtor's other Secured Creditor is **Univest Bank**. The Debtor entered into a lease financing agreement with Univest Bank ("Univest") prior to the petition date for gym equipment financing. Some of the equipment was delivered prior to the Petition Date, but approximately 5 pieces of equipment have not been delivered and funds have not been released due to Univest's concerns with the Debtor moving forward with a confirmable plan. The Debtor proposed gradually increased payments to Univest in its Plan.

The Debtor's **Administrative Claims** are being paid in full through the plan per Section 1191(e) of Subchapter V based on the claims filed as of the filing of this Plan.

The Debtor's proposed Plan makes no payments to **unsecured creditors**.

**Claims Bar:**
The Debtor requests that as of the filing of this Plan, any further filed claims are barred and only the claims filed to date are considered in the Debtor's Plan. All of the Debtor's creditors have received notice of the bankruptcy and have either actively participated in the bankruptcy or failed to participate at all.

**Debtor's Proposed Plan:**
In determining a plan for reorganization and calculation of the Debtor's Projected Disposable Income under 11 U.S.C. Section 1191(d), it is important to understand the history of the Debtor in regard to "membership numbers". The Debtor uses membership numbers to drive revenue projections. Each membership fee on the Disposable Income Spreadsheet and Plan Payments **(attached as Exhibit "A, A-1 AND A-2")** includes an annual fee of $39 and a monthly dues fee of $29.99.

Debtor's monthly membership fees were not always $29.99. These fees have been increased over the Debtor's

most recent period of distress to supplement decreased membership at the Limerick Location and increased rental expense at this same location. Nevertheless, Debtor's monthly and annual fees are still within market parameters. In order to keep members satisfied in light of the minimal increases in fees, Debtor offered extra options to members such as small group personal training and an "InBody" medically based personal fitness analysis.

As recently as 2018 the Limerick Location's gross income was $601,378 per year or the equivalent of $50,114 per month – or roughly 1,780 recurring memberships at the 2018 price point – making the Limerick Location, the Debtor's most profitable in 2018.

In 2019 however, the bottom dropped out for Limerick, losing over $152,000 of annual income or about 600 members. This reduction was mostly due to the fact that rent at Limerick went up 40% within this time frame and a Planet Fitness moved in 1.5 miles down the road causing the Debtor to first consider bankruptcy protection. It was at this point that the Debtor reached out to First Bank seeking assistance in a rebranding effort, and First Bank agreed to lend additional funds in early 2019.

The structure of this proposed Plan was actually first submitted over a year ago to First Bank and included the following:

1. Sale of the North Coventry Location;
2. Re-branding, sale or closure of the Limerick Location; and
3. Focus of time and attention on Collegeville Location to attain profitability.

Based on the ideas submitted to First Bank over a year ago, the Debtor has significantly achieved most of the goals set forth above:  Sale of North Coventry as a going concern; sale of the Limerick Location equipment; and in spite of the Covid-19 pandemic, the Collegeville location can carry the Debtor through a feasible five (5) year plan that is fair and equitable to First Bank, Brixmoor (Collegeville Plaza Associates) and Univest.

**The Collegeville Plan:**
The Collegeville Location opened up in 2015 as the Debtor's newest location.

It is a demographic the Debtor's principal is intimately knowledgeable about, having owned a health club in this demographic from 1990 to 2004. Collegeville also has the least competition.

2016 gross income for Collegeville was $360,000 per year.
2017 gross income was $412,000 per year.
2018 gross income for Collegeville was $455,000.

2019 gross income for Collegeville was $477,828.37
The above numbers indicate movement in the right direction and why the Debtor is focused on Collegeville.

Debtor is confident that the closure of Limerick and a focusing on marketing of new offerings at Collegeville will easily cause an additional 200 memberships from the Limerick location to Collegeville. Conveniently, 177 of the current 1,100 Limerick members live as close or closer to the Collegeville location. The Debtor estimates the 200 members who migrate from the Limerick Location to the Collegeville Location to be conservative. Moreover, the closing of Gold's Gym, Retro Fitness and 24-Hour Fitness in the area, will lead more of these members to the Debtor's Collegeville Location.

Debtor's goal is to bring Collegeville to 2,000 members, but even 1,000 memberships make the Debtor's Plan fair, equitable and feasible – in spite of the current Covid-19 shutdown.

The Plan proposes that "Month One" of plan payments begin **60 days AFTER** the Governor of Pennsylvania re-opens Pennsylvania business with no restrictions. Debtor expects that the Limerick Location members will migrate sometime around Month 3.

The Debtor's Plan moving forward is summarized as follows:

a. Debtor's Plan calls for 200 Limerick Location members to transfer from Limerick as a conservative goal. All memberships are in one system so they will all become Collegeville members until they cancel.
b. Debtor will generate additional revenue from selling small group training and market to gyms closed due to Covid-19.
c. Debtor's Covid-19 response to its Limerick and Collegeville members is attached as **Exhibit "B."**

The Debtor is hoping that Covid-19 restrictions will soon relax for health and fitness clubs based on the White House recommendations and on the recent medical research as set forth on the University of Virginia report, attached as **Exhibit "C."**

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

A liquidation analysis is attached as **EXHBIIT "D."**   THE LIQUIDATION ANALYSIS IS BASED ON THE SALE OF THE EQUIPMENT AT LIMERICK AND COLLEGEVILLE AS PER THE EQUIPMENT VALUES IN THE ATTACHEDEQUIPMENT VALUES SET FORTH IN **EXHIBIT "E,"** ATTACHED.

### C. Ability to make future plan payments and operate without further reorganization

The Debtor shows that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. Therefore, the Plan is feasible.

The Debtor has provided projected financial information as set forth on **Exhibit "A,"** on tab 1, **Plan to Move Forward.**

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) as set forth on **Exhibit "A, " tab 1, Plan to Move Forward.**

The final Plan payment is expected to be paid in 2025.

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES              Case number 20-100014 ELF

# Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of BODY TRANSIT, INC. from CASH FLOW OPERATIONS.

This Plan provides for:

| | |
|---|---|
| 1 | classes of priority claims; |
| 1 | classes of secured claims; |
| 0 | classes of non-priority unsecured clams; and |
| 0 | classes of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately .0 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# Article 2: Classification of Claims and Interests

2.01 **Class 1** ....................... All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). **THIS CLASS INCLUDES ALL ATTORNEYS FEES SUBCHAPTER V TRUSTEE FEES AND ACCOUNANT FEES AND ANY ADDITIONAL PROFESSIONAL FEES APPROVED BY THE COURT PRE OR POST CONFIRMATION.**

**THESE CLAIMS SHOULD BE PAID IN THE APPROXIMATE AMOUNT OF $60,000.00**

2.02 **Class 2** ....................... The claim of **FIRST BANK IN THE AMOUNT OF $317,573.82 PER THE VALUATION MOTION**, to the extent allowed as a secured claim under § 506 of the Code AND THE Valuation Motion.

2.03 **Class 3** ....................... All non-priority unsecured claims allowed under § 502 of the Code.
**ESTIMATED IN THE AMOUNT OF $0.00**

2.04 **Class 4** ....................... Equity interests of the Debtor **in the amount of $0.00**

# Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01 **Unclassified claims**

3.02 **Administrative expense claims**

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES                                       Case number 20-100014 ELF

| | | |
|---|---|---|
| Under section § 1123(a)(1), administrative expense claims, and priority tax claims | are not in classes.<br><br>Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full over the life of the Plan in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. | |
| | **3.04 Statutory fees** | |
| | Each holder of a priority tax claim will be paid --   THERE ARE NO PRIORITY TAX CLAIMS. | |
| **3.03 Priority tax claims** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. | |
| **3.05 Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. | |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>XX Unimpaired | Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable.  ALL CLAIMS FILED AS OF THE DATE OF THIS AMENDED PLAN ARE FINAL CLAIMS AND ALL FUTURE FILED CLAIMS SHALL BE BARRED. |
| Class 2 – **Secured claim** of FIRST BANK STRIPPED DOWN TO THE VALUE TO THE AMOUNT OF FIRST BANK'S COLLATERAL<br><br>UNIVEST BANK PRE-POST PETITION FINANCING<br>**XX** IMPAIRED EQUIPMENT VALUE DIMINISHED | XX Impaired<br>☐ Unimpaired | |
| Class 3 – **Non-priority** unsecured creditors<br><br>     IMPAIRED – NO PAYMENTS TO UNSECURED CLAIMS | | |
| Class 4 - Equity security holders of the Debtor<br><br>**THERE ARE NO EQUITY SECURITY HOLDER CLAIMS** | | |

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES                    Case number 20-100014 ELF

## Article 5: Allowance and Disallowance of Claims

**5.01 Disputed claim**

A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02 Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed IF NOT FILED BY THE DATE OF THE FILING OF THIS AMENDED PLAN

**5.03 Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES                          Case number 20-100014 ELF

| | | |
|---|---|---|
| 6.01 **Assumed executory contracts and unexpired leases** | (a) | The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br><br>**LEASE BETWEEN DEBTOR AND BRIXMOOR FOR COLLEGEVILLE LOCATION.**<br><br>**PRE/POST PETITION FINANCING EQUIPMENT AGREEMENT WITH UNIVEST BANK FOR ADDITIONAL EQUIPMENT FOR COLLEGEVILL LOCATION.** |
| | (b) | Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed AS OF THE ☐ FILING OF THIS PLAN ON APRIL 22, 2020. |

### Article 7: Means for Implementation of the Plan

**DEBTOR WILL FUND THE PLAN FROM THE INCOME FROM MEMBERSHIP FEES OBTAINED AFTER THE SHUTDOWN FROM THE COVID-19 EPIDIMIC, AS PER THE ATTACHED SPREADSHEET FILED AS EXHIBIT "A."**

### Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that **is 60 days** after the entry of the confirmation order DUE TO THE COVID-19 SHUTDOWN. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. IF HOWEVER THE COVID-19 PANDEMIC RESURFACES IN THE FALL OF 2020, THE DEBTOR RESERVES ITS RIGHT TO AMEND ITS PLAN TO ACCOMMODATE ANY FURTHER COVID-19 SHUTDOWN. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of PENNSYLVANIA govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |

Official Form 425A               Plan of Reorganization for Small Business Under Chapter 11               page **5**

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES                    Case number 20-100014 ELF

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES                    Case number 20-100014 ELF

| [8.07 **Corporate governance** | **THE DEBTOR IS AN "S" CORPORATION ORGANIZED UNDER THE LAWS OF THE COMMONWEALTH OF PA AND ALL FEDERAL IRS GUIDELINES.** |
|---|---|

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES                    Case number 20-100014 ELF

| [8.08 **Retention of Jurisdiction** | This Court shall retain jurisdiction until substantial consummation of the Debtor's Plan post confirmation. |

### Article 9: Discharge

[Include the appropriate provision in the Plan]

**[No Discharge -- Section 1141(d)(3) IS applicable.]**

In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

**[Discharge -- Section 1141(d)(3) IS NOT applicable; use one of the alternatives below]**
**SEE BELOW**

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES                                    Case number 20-100014 ELF

**XXXXXX  [Discharge if the Debtor is a corporation under Subchapter V]**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:
    (i) imposed by this Plan; or
    (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:
    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Article 10: Other Provisions

[Insert other provisions, as applicable.]

THE DEBTOR'S PLAN CONTEMPLATES A COVID-19 LAG TIME FOR PLAN PAYMENTS WITH PAYMENTS RAMPING UP WITHIN 120 DAYS AFTER A FULL RELAXATION OF COVID RESTRICTIONS – MINIMAL PLAN PAYMENTS HOWEVER BEGIN WITHIN 60 DAYS AFTER RELAXATION OF FULL COVID RESTRICTIONS .  DEBTOR RETAINS ITS RIGHT TO AMEND THIS PLAN WITHIN ONE (1) TO THREE (3) YEARS TO ASSESS THE EFFECTS OF THE COVID-19 EPIDEMIC AND A POTENTIAL RELAPSE OF SUCH IN THE FALL/WINTER OF 2020.

Respectfully submitted,  *MAGGIE S. SOBOLESKI, ESQ.*

Debtor Name BODY TRANSIT, INC. D/B/A/ RASCALS FITNES          Case number 20-100014 ELF

✖ _____
[Signature of the Plan Proponent]            [Printed Name]

✖ /s/ Maggie S. Soboleski
[Signature of the Attorney for the Debtor]        [Printed Name]